NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2701

THE STATE OF OHIO, APPELLANT, *v.* REILLO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Reillo*, Slip Opinion No. 2026-Ohio-2701.]

*Criminal law—Manifest-weight review—When conducting a manifest-weight review, an appellate court must defer to the fact-finder's witness-credibility determinations—Court of appeals erred by reviewing victim's credibility de novo—Defendant's convictions were not against manifest weight of the evidence—Court of appeals' judgment reversing convictions and remanding case for new trial reversed and cause remanded.*

(No. 2024-1769—Submitted November 19, 2025—Decided July 17, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 113531, 2024-Ohio-3307.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**KENNEDY, C.J.**

{¶ 1} This discretionary appeal from a judgment of the Eighth District Court of Appeals presents the question whether a court, when reviewing a claim that a conviction is against the manifest weight of the evidence, must give deference to a fact-finder's witness-credibility determinations. We answer that question in the affirmative.

{¶ 2} Appellee, Nelson Reillo, was indicted on two counts of rape and one count of gross sexual imposition for assaulting E.C., who was eight years old when the alleged offenses occurred. At trial, E.C. testified and there was no evidence that conflicted with her account of the crimes. The jury found Reillo guilty on one count of rape and one count of gross sexual imposition, and it acquitted him on the other rape count. On appeal, the Eighth District reversed the convictions as being against the manifest weight of the evidence, 2024-Ohio-3307, ¶ 26-27 (8th Dist.), substituting its judgment for the jury's on the credibility of E.C.'s testimony. In doing so, the court considered itself the "thirteenth juror," *id*. at ¶ 26, and reviewed the evidence de novo, *see id.* at ¶ 23.

{¶ 3} However, appellate courts reviewing a manifest-weight challenge must still give some deference to a fact-finder's credibility determinations. *See In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). An appellate court sits as the thirteenth juror only when evidence contradicts a fact-finder's findings, *see State v. Martin*, 2022-Ohio-4175, ¶ 26, or when a witness's testimony is so inconsistent as to material facts, so impeached, or so fantastical as to make it patently unbelievable. Without conflicting testimony or evidence that completely discredited E.C., the Eighth District had nothing to weigh. Consequently, Reillo's convictions are not against the manifest weight of the evidence and we therefore reverse the Eighth District's judgment.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Trial-Court Proceedings

{¶ 4} In January 2023, the Cuyahoga County Grand Jury indicted Reillo on three counts for acts allegedly committed against E.C.: Counts 1 and 2 alleged rape of a child under the age of 13, *see* former R.C. 2907.02(A)(1)(b), 2007 Am.Sub.S.B. No. 10 (rape of a person less than 13 years of age); and Count 3 alleged gross sexual imposition against a child under the age of 13, *see* former R.C. 2907.05(A)(4), 2007 Am.Sub.S.B. No. 10 (gross sexual imposition against a person less than 13 years of age). Count 1 included an additional specification that the victim was less than ten years old. At trial, the jury heard evidence from four witnesses: a social worker, a physician's assistant, E.C., and a police detective.

{¶ 5} The State's first witness was Courtney Wilson, who testified that she is a social worker with extensive training in various types of child abuse, including sexual abuse. Wilson explained that in 2020, she conducted a videotaped forensic interview of then 17-year-old E.C. at Akron Children's Hospital's Child Advocacy Center following a referral from E.C.'s primary-care provider. She said that during the interview, E.C. revealed that she had been sexually abused when she was about eight years old while living in Cleveland. Wilson described E.C. as polite, quiet, and cooperative, and she said that E.C. had no trouble recalling information and details. After ensuring that E.C. could be discharged safely to her home, Wilson reported the abuse allegations to the Cleveland Police Department.

{¶ 6} The jury then heard from Audrey Swank, a physician's assistant who treated E.C. at a pediatrician's office in Cortland. Swank explained that she was a primary-care provider and that she had treated E.C. for the flu in early 2020. Later that year, when she was 17, E.C. sought treatment for a rash and depression. Although Swank saw no evidence of self-harm, she testified that when she asked E.C. about what caused her depression, E.C. revealed that she had been sexually assaulted as a child. E.C. said she had disclosed the abuse to no other adult but

wanted to tell her mother with Swank present. Swank made sure E.C. was safe, reported the abuse to Trumbull County Children Services, and shortly thereafter referred E.C. to Akron Children's Hospital's Child Advocacy Center.

{¶ 7} Next, E.C. testified. E.C. was around eight years old and living with her mother and two siblings in Cleveland when Reillo—her mother's boyfriend at the time—moved into the family's home. Reillo stayed with them for about a year before he and E.C.'s mother broke up. After that, E.C. saw him only one other time before moving out of Cleveland when she was ten.

{¶ 8} Although E.C. admitted that she did not have many memories from this time and was not certain of the chronology of events, she nonetheless testified that Reillo had sexually abused her while he was living with her family. The first incident that she testified about occurred in her mother's bedroom. E.C. was alone with Reillo, sitting on his lap while he played a computer game at a desk in the bedroom. Reillo then picked E.C. up, put her on the desk, and took off her pants. E.C. did not remember whether she had been wearing underwear but affirmed that she was "naked where [her] underwear would normally be." Reillo spread E.C.'s legs and put his mouth on her vagina. E.C. testified that she felt his mouth moving and opening her vaginal lips. While she could not remember what happened after Reillo stopped, E.C. recalled that this incident occurred during the day.

{¶ 9} Then, E.C. testified about another incident that happened when she was alone with Reillo in her mother's bedroom. E.C. said that Reillo was lying on his back on the bed with a "large towel" covering only his "private area." He picked E.C. up, placed her on the towel "over his private area," and moved her from side to side and up and down. E.C. remembered being alone with Reillo and looking around the room and at the ceiling. She did not recall whether she felt his genitalia or if Reillo said anything during the incident.

{¶ 10} E.C. also described an incident during which she was eating chips and watching television with Reillo, and he leaned over and took a chip from her

mouth with his tongue. E.C. then recalled a time when she was naked in the bathtub and Reillo entered the bathroom, stared at her, and said something before leaving the room. According to E.C., the abuse occurred only while Reillo lived with the family and that during that time, he was an authority figure and sometimes the only adult at home.

{¶ 11} Concerning her disclosures about Reillo's actions, E.C. testified that she had revealed the abuse to numerous people, though she explained that she had not offered any details about Reillo's actions when making those disclosures. First, when she was roughly 14, E.C. told her best friend about the abuse. Then, during the same time period, she disclosed the abuse to her sister, although E.C. said that her sister had already "kind of guessed" before E.C. told her. Relevant here, is the following exchange that E.C. had with defense counsel on cross-examination:

Q. And you [n]ever told your brother [about the abuse], correct? And you never told your sister?

A. Yes.

Q. Around the time when [Reillo] was still living there, correct?

A. Correct.

E.C. also testified that at 16, she had revealed the abuse to her partner. She further explained that although she had seen a therapist while a high-school sophomore, she never disclosed Reillo's abuse to that therapist or any other adult because she did not want her mother to find out about it.

{¶ 12} E.C. testified that despite these concerns, she ultimately told Swank about Reillo's abuse when she was 17 because of her worsening mental health and self-harm; she believed that her mental-health issues arose from blaming herself for the abuse. E.C. claimed that she had never met Swank before this wellness check.

According to E.C., a doctor made her tell her mother about the abuse. And following that disclosure, E.C. participated in the videotaped forensic interview with Wilson, during which she provided specific details of the abuse for the first time. After the interview with Wilson, E.C. had a physical exam and later met with the prosecutor to discuss the case.

{¶ 13} The State closed its case with testimony from Richard Durst, a detective in the Cleveland Police Department's sex-crimes and child-abuse unit. Durst explained how the methods for processing an abuse report varied depending on when the abuse was reported, noting that most of his cases involved late reporting. He testified that Wilson had reported E.C.'s abuse and provided enough information for him to prepare a report and obtain a medical release. From there, Durst interviewed E.C.'s mother and sister. Neither E.C.'s mother nor her sister told Durst that E.C. had told them about the abuse before she revealed it to Swank. Durst testified that after conducting his investigation, he brought the case to the city prosecutor, who determined that it should be reviewed by the grand jury.

{¶ 14} Finally, the parties gave closing arguments. Relevant here, the prosecutor characterized Reillo as having removed not only E.C.'s pants but also her underwear during the first incident she testified about. As for the second incident E.C. testified about, the prosecutor said: "[Reillo's] naked. He just has a towel covering his private area. [E.C.] is placed on top of his private area, so private area to private area and [Reillo] is moving [E.C.] up and down. To me that sounds like vaginal intercourse." On rebuttal, the prosecutor acknowledged that E.C. did not remember much but insisted that she remembered enough for a conviction.

{¶ 15} The jury found Reillo guilty on Count 1 (rape of a child under the age of 13) and Count 3 (gross sexual imposition against a child under the age of 13) and not guilty on Count 2 (rape of a child under the age of 13). With respect to Count 1, the jury also found the additional specification that E.C. was less than ten years of age at the time of the offense. The trial court sentenced Reillo to life

imprisonment with the possibility of parole after 15 years for Count 1, running concurrently with 5 years in prison for Count 3. The judge also imposed a five-year term of post-release control for Count 3, fined Reillo $1,270, and classified him as a Tier III sex offender.

## B. Reillo's Appeal to the Eighth District

{¶ 16} Reillo appealed his conviction to the Eighth District, presenting two assignments of error. First, Reillo argued that his rape conviction was against the manifest weight of the evidence. Second, he contended that his gross-sexual-imposition conviction was based on insufficient evidence. The Eighth District reversed both of Reillo's convictions as against the manifest weight of the evidence. 2024-Ohio-3307 at ¶ 1-2, 14, 26-27 (8th Dist.).

{¶ 17} After observing that E.C. was the only witness who had provided relevant evidence establishing proof of the crimes, *id*. at ¶ 5, the Eighth District characterized her testimony as "conclusory," *id*. at ¶ 14, and explained that "[a] witness can be perceived as being truthful" without being credible "in the legal sense," *id*. at ¶ 15. The court stated that in addressing a manifest-weight challenge, it sat as the "'thirteenth juror'" and was therefore required to "consider the overall credibility of the State's case," *id*. at ¶ 17, without deferring to the jury's credibility determinations, *id*. at ¶ 23. Otherwise, the Eighth District reasoned, manifest-weight review would be no different than determining whether the evidence was sufficient to sustain a conviction. *Id.* at ¶ 23.

{¶ 18} The Eighth District noted that E.C. was young when the abuse occurred, lacked memory about the details of the offenses, and contradicted herself and the other witnesses at times. *Id.* at ¶ 5-7, 18, 26. Specifically, the court of appeals said that E.C. had wavered on whether she gave Swank a detailed disclosure of the abuse. *Id.* at ¶ 5. It also said that she contradicted herself on cross-examination when testifying about her disclosure to her sister. *Id.* at ¶ 6. Additionally, the Eighth District believed that E.C.'s testimony contradicted Durst's

testimony regarding that disclosure. *Id.* Further, the court pointed out that the State had used leading questions and never "attempt[ed] to rehabilitate [E.C.'s] lack of memory as to the details surrounding the allegations of the crimes themselves." *Id.* at ¶ 18.

{¶ 19} Based on E.C.'s inconsistencies and lack of detail, combined with what the Eighth District characterized as the State's misrepresentations of her testimony in closing argument, the court held that Reillo's convictions were against the manifest weight of the evidence. 2024-Ohio-3307 at ¶ 12, 14-15, 24 (8th Dist.). So, despite concluding that E.C. was not being untruthful, *id.* at ¶ 25, that the State's evidence was sufficient, *id.* at ¶ 14, and that the State was not "required to prove anything extra," *id.*, the Eighth District reversed Reillo's convictions and remanded the matter for a new trial, *id.* at ¶ 27.

{¶ 20} The Eighth District denied the State's motions for reconsideration and en banc consideration.

### C. The State's Appeal to This Court

{¶ 21} The State appealed, and we accepted jurisdiction over the following proposition of law: "An appellate Court's function in a weight of the evidence review is to address clear conflicts in testimony and must afford the factfinder a certain level of deference. Therefore, a Court cannot simply substitute its judgement for that of the factfinder." *See* 2025-Ohio-705.

## II. LAW & ANALYSIS

### A. Standard of Review

{¶ 22} "This court does not ordinarily consider challenges to the manifest weight of the evidence in noncapital cases." *State v. Brown*, 2025-Ohio-2804, ¶ 28. However, whether a court reviewing a manifest-weight challenge should give any deference to a fact-finder's credibility determinations is a question of law; therefore, our review of this manifest-weight challenge is appropriate, and we apply a de novo standard of review, *see Arnott v. Arnott*, 2012-Ohio-3208, ¶ 17. Here,

the Eighth District erred by reviewing E.C.'s credibility de novo. When giving the proper deference to the fact-finder, Reillo's convictions are not against the manifest weight of the evidence.

## B. The Eighth District Erred in Reviewing E.C.'s Credibility De Novo

{¶ 23} Article IV, Section 3 of the Ohio Constitution establishes this State's appellate courts. Relevant here, Section 3(B)(3) states that "[n]o judgment resulting from a trial by jury shall be reversed [by a court of appeals] on the weight of the evidence except by the concurrence of all three judges hearing the cause."

{¶ 24} At the outset, it is important to note that "[c]hallenges to the sufficiency of the evidence and the weight of the evidence involve distinct legal concepts and different standards of review. . . . While both challenge the strength of the evidence, '[a] challenge to the sufficiency of the evidence attacks its adequacy . . . while a challenge to the weight of the evidence attacks its persuasiveness.'" (Bracketed text and second ellipsis in original.) *State v. Jordan*, 2023-Ohio-3800, ¶ 15, quoting *Disciplinary Counsel v. Smith*, 2017-Ohio-9087, ¶ 23. Put differently, while a review of the sufficiency of the evidence asks whether the State met its burden of production, a manifest-weight-of-the-evidence challenge looks to whether the State met its burden of persuasion. *State v. Messenger*, 2022-Ohio-4562, ¶ 26, citing *State v. Messenger*, 2021-Ohio-2044, ¶ 44-45 (10th Dist.); *State v. Thompkins*, 1997-Ohio-52, ¶ 36-37 (Cook, J., concurring).

{¶ 25} As this court has explained:

"Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be

established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' "

(Emphasis added in *Thompkins*.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990).

{¶ 26} Accordingly, under a manifest-weight review, a court "'"'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' " *Brown*, 2025-Ohio-2804, at ¶ 30, quoting *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus.

{¶ 27} However, appellate courts may "vacate a jury's verdict and order a new trial '"only in the exceptional case in which the evidence weighs heavily against the conviction."' " *Id*. at ¶ 31, quoting *Thompkins*, 1997-Ohio-52, at ¶ 25, quoting *Martin* at 175. In such cases, the court sits as a "'"'thirteenth juror"'" who may disagree with the fact-finder's resolution of the *conflicting evidence*." (Emphasis added.) *State v. Martin*, 2022-Ohio-4175, ¶ 26, quoting *Thompkins* at ¶ 25, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶ 28} But "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley*, 2012-Ohio-2179, at ¶ 21. "'"'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."' " *Z.C.*, 2023-Ohio-4703, at ¶ 14, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jur.3d, Appellate Review, § 603, at 191-192 (1978). "'The underlying rationale of giving deference to the findings of the [fact-finder] rests with the knowledge that the [fact-finder] is best able to view the witnesses and

observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal* at 80.

{¶ 29} Here, the Eighth District refused to give any deference to the jury's credibility determination regarding E.C., finding that the presumption in favor of the factfinder originating in *Eastley* was dicta because it was not in the syllabus and was "stated in passing." 2024-Ohio-3307 at ¶ 22 (8th Dist.). Nevertheless, this court has since utilized the deferential standard set out in *Eastley*, *see Z.C.* at ¶ 14, making it law even if we do not cite it in every manifest-weight case. *See* Rep.Op.R. 2.2 ("Statement of Law"); Ohio Const., art. IV, § 1. Therefore, reviewing courts must apply that standard.

## C. Reillo's Convictions Are Not against the Manifest Weight of the Evidence

{¶ 30} Ordinarily, courts must have conflicting evidence to conduct a manifest-weight review. *See Brown*, 2025-Ohio-2804, at ¶ 30. Here, Reillo presented no evidence. Additionally, while the Eighth District used what it claims were factual misstatements during the State's closing argument as part of its rationale for reversing Reillo's convictions, 2024-Ohio-3307 at ¶ 12, 24 (8th Dist.), those statements are not evidence. *See State v. Maurer*, 15 Ohio St.3d 239, 269 (1984) ("Closing arguments are not evidence."). Consequently, there was no conflicting evidence to weigh.

{¶ 31} Nevertheless, that does not end our analysis. As the State conceded in its merit brief and during oral argument, there may be circumstances in which an appellate court, while according proper deference to the fact-finder, must nonetheless conclude that the fact-finder clearly lost its way. We agree with the State that such a case could be one in which internally contradictory testimony as to material facts, direct impeachment, or fantastical testimony clearly undermines a witness's credibility on a cold record.

**{¶ 32}** There must be something more than a mere inconsistency, though, because appellate courts must give deference to fact-finders. *See State v. Buchar*, 2017-Ohio-7601, ¶ 21 (5th Dist.), quoting *State v. McGregor*, 2016-Ohio-3082, ¶ 10 (5th Dist.) ("'While the [factfinder] may take note of the inconsistencies and resolve or discount them accordingly . . . such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'" [Bracketed text in original; ellipsis added in *McGregor*.]); *Z.C.*, 2023-Ohio-4703, at ¶ 14. As many of Ohio's courts of appeals have found, the fact-finder, "as the trier of fact, is in the best position to determine the weight and credibility of the evidence, including inconsistencies, along with witness manner and demeanor, and is in the sole position to believe or disbelieve all or any of the testimony presented at trial." *State v. Johnson*, 2023-Ohio-2424, ¶ 23 (6th Dist.); *see also State v. McNamara*, 2016-Ohio-8050, ¶ 38-40 (8th Dist.); *State v. Thompson*, 2008-Ohio-4551, ¶ 20-21 (10th Dist.). Since the fact-finder is in this superior position to decide which testimony to believe and which to disregard, a reviewing court should defer to the fact-finder's credibility determinations when presented with mere inconsistencies that arose at trial. *State v. Lee*, 2006-Ohio-5951, ¶ 12 (10th Dist.); *see also Z.C.* at ¶ 14.

**{¶ 33}** Here, we have thoroughly reviewed the record and now conclude that E.C.'s testimony was not so inconsistent as to material facts, so impeached, or so fantastical as to render it patently unbelievable. And, despite its holding, the Eighth District admits as much by concluding that "there is no suggestion that E.C. was being untruthful at trial." 2024-Ohio-3307 at ¶ 15, 25 (8th Dist.). What it struggled with was her "'ability to accurately perceive and communicate that about which'" she testified. *Id.* at ¶ 15, quoting *Kravitz v. Long Island Jewish-Hillside Med. Ctr., Community Health Program of Queens-Nassau, Inc.*, 113 A.D.2d 577, 582 (N.Y.App. 1985).

{¶ 34} But whether a witness can perceive events and testify truthfully to them is a question of competency, *see* R.C. 2317.01; *State v. Wallace*, 37 Ohio St.3d 87, 93-95 (1988); *State v. Muttart*, 2007-Ohio-5267, ¶ 31, citing Evid.R. 601(A), which is reviewed for abuse of discretion, not under manifest weight, *State v. Clark*, 1994-Ohio-43, ¶ 16. Regardless, E.C. is presumed competent despite being eight when the incidents occurred. *See Clark* at paragraph one of the syllabus; R.C. 2317.01; Evid.R. 601(A). Therefore, the Eighth District not only ignored precedent but also conflated legal standards to overturn the jury's verdict.

{¶ 35} Nonetheless, the Eighth District did point to three instances of E.C. purportedly contradicting herself or other witnesses, and we deal with each in turn. First, the Eighth District said that E.C. wavered on whether she simply told Swank she had been abused or whether she gave Swank a detailed disclosure. 2024-Ohio-3307 at ¶ 5 (8th Dist.). However, E.C. never even hinted at giving Swank a detailed disclosure of the abuse. Second, the Eighth District claimed that E.C. seemingly contradicted herself during cross-examination about whether she had ever disclosed Reillo's abuse to her sister, *id*. at ¶ 6; the full exchange, however, shows the opposite. Defense counsel was asking about the period when Reillo lived with her family, whereas E.C. testified on direct examination that she disclosed the abuse to her sister years after Reillo left her home. Finally, the Eighth District highlighted the fact that E.C.'s sister never told Detective Durst about E.C.'s disclosure to her. *Id*. But that does not mean the disclosure never happened; it simply means that E.C.'s sister never told Durst. Therefore, the supposed discrepancies identified by the Eighth District were not inconsistencies at all.

{¶ 36} However, even if these were inconsistencies, they would be insufficient to reject the jury's credibility determination since details about E.C.'s disclosures are not elements of the charged offenses. At worst, they are minor inconsistencies unrelated to material facts, meaning we should defer to the jury's resolution of them, as it heard and saw E.C. testify. Additionally, they do not show

that E.C.'s testimony was so impeached or fantastical as to make her completely unbelievable.

{¶ 37} Therefore, when according proper deference to the jury's credibility determinations, the record shows that Reillo's convictions are not against the manifest weight of the evidence. E.C. testified about two instances of abuse that occurred when she was eight. First, she recalled Reillo opening and moving her vaginal lips with his mouth. The jury used this testimony to find Reillo guilty on Count 1: rape by engaging in cunnilingus with E.C. when she was under ten. Next, E.C. testified that Reillo, with only a towel over his private area, rubbed her body over his genitals. This corresponds with Count 3: rubbing E.C.'s body against his naked body when she was under 13. And because Reillo was found guilty on only those two counts, the jury was seemingly able to parse out testimony and determine credibility. Accordingly, Reillo's convictions are not against the manifest weight of the evidence.

### III. CONCLUSION

{¶ 38} Manifest-weight review is a meaningful protection against unjust convictions. *See Brown*, 2025-Ohio-2804, at ¶ 30-31. Nonetheless, when conducting a manifest-weight review, appellate courts must defer to the fact-finder's witness-credibility determinations. Here, the court of appeals failed to do so. Since E.C.'s credibility was not clearly undermined, Reillo's convictions are not against the manifest weight of the evidence. Therefore, we reverse the Eighth District Court of Appeals' judgment and remand the matter to that court for consideration of Reillo's second assignment of error.

Judgment reversed
and cause remanded.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen W. Knapp and Michael R. Wajda, Assistant Prosecuting Attorneys, for appellant.

Russell S. Bensing, for appellee.

Cullen Sweeney, Cuyahoga County Public Defender, and Michael Wilhelm, Assistant Public Defender; and Raymond T. Faller, Hamilton County Public Defender, and Christine Y. Jones, Assistant Public Defender, urging affirmance for amici curiae, the Office of the Cuyahoga County Public Defender and the Hamilton County Public Defender.

————————————